UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ )
                                )
ANDREW LOWNIE                    )
                                )
Plaintiff,                       )
                                )
        v.                       )
                                )        Case No. 25-10261
                                )
SIMON & SCHUSTER, LLC            )
                                )
Defendant.                       )
_____ )

## COMPLAINT

### Introduction

1. Plaintiff, Dr. Andrew Lownie, is an historian, literary agent, journalist, and noted author with over a dozen published works to his credit including best-selling biographies such as *Stalin's Englishman: The Lives of Guy Burgess*, *Traitor King: The Scandalous Exile of the Duke & Duchess of Windsor*, and *The Mountbattens: Their Lives & Loves*; he now sits on the Advisory Committee of Biographers International Organization and is a reviewer for the *Wall Street Journal.*

2. Plaintiff brings this action against Defendant, Simon & Schuster, LLC, for its breach of the parties' publishing agreement for Plaintiff's most recent manuscript, originally entitled *The Controversial Lives of the Duke and Duchess of York* and now known as *Entitled: The Rise and Fall of the House of York* ("*Entitled*").

3. Defendant terminated the parties' agreement in bad faith on the pretext that Plaintiff's book—subsequently published in the United Kingdom by HarperCollins UK and an immediate best seller—was "editorially unacceptable."

4. Plaintiff brings this action to vindicate his rights under the agreement.

## The Parties

5. Dr. Andrew Lownie is a citizen of the United Kingdom.

6. Simon & Schuster, LLC is a publishing company incorporated pursuant to the laws of Delaware. Its principal place of business is in New York County, New York.

## Jurisdiction and Venue

7. This Court has jurisdiction over this matter pursuant to 28 USC §1332(a)(2) because Plaintiff is a citizen of the United Kingdom, Defendant is a citizen of Delaware and New York, and the amount in controversy exceeds $75,000. Venue is proper in this district.

8. Paragraph 37 of the parties' agreement states that "exclusive jurisdiction for the determination of any dispute solely between or among parties to this Agreement is hereby vested in the federal and state courts sitting in New York County, New York, to which each party irrevocably submits."

## Statement of Facts

9. In February 2025, the parties came to an agreement in principle on the financial terms for the publication of Plaintiff's next book in the United States. Plaintiff had, by that time, sold the rights of the United Kingdom edition of the book to HarperCollins UK with publication set for August 2025.

10. On April 13, 2025, the parties executed an agreement ("Agreement") dated March 7, 2025, for Defendant to publish the United States edition of Plaintiff's manuscript, an

exhaustive account of Prince Andrew and his ex-wife, Sarah Ferguson's, personal and royal scandals.

11. The Agreement provided that Defendant would pay Plaintiff a $250,000 advance against future royalties in three parts as is customary in the publishing industry.

12. Upon signing the Agreement, Defendant paid the first third of the total advance ($83,333.33).

13. The Agreement required that Defendant pay the next third upon acceptance of Plaintiff's manuscript and the final third either at the time of publication or upon Publisher's failure to publish within the timeframe specified in the Agreement.

14. Defendant was obligated, per the Agreement, to pay Plaintiff further royalties after sales of all United States editions were sufficient to recoup the advance.

15. Paragraph 13(a) of the Agreement provided that: "The Publisher shall not be obligated to accept or publish the Work if in its sole reasonable judgment, the Work is not **editorially** acceptable to it." (Emphasis in original).

16. In that same sub-paragraph, the Agreement set out the review process that was to occur upon Plaintiff's delivering the manuscript. Namely, if Defendant determined that the manuscript as initially delivered by Plaintiff was editorially unacceptable, it would request revisions to the manuscript in reasonable detail. Plaintiff would have ninety (90) days to make such revisions and resubmit the manuscript to Defendant.

17. Plaintiff delivered his manuscript to Defendant on April 13, 2025, the same day that the parties executed the Agreement.

18. On April 17, Aimee Bell, an employee of Defendant, emailed Plaintiff the Defendant's editorial team's "notes on what we feel the book needs to get it ready for bestsellerdom

[*sic*]." The notes included eight brief bullet points, such as a request for an introduction, and closed with: "The material is all here—we just need to shape it a bit more!"

19. Ms. Bell copied Ms. Arabella Pike, Plaintiff's editor at HarperCollins UK, on the April 17 email. Despite Defendant having previously announced an August 12 publication date for its US edition of *Entitled*, Ms. Bell proposed that the UK publication date be moved from August to November in order to accommodate an apparent change to Defendant's publication schedule.

20. While not a condition of the Agreement, upon information and belief, Defendant hoped to release its United States edition of *Entitled* at the same time as the United Kingdom edition.

21. On April 22, Ms. Pike confirmed via email to Ms. Bell that HarperCollins UK intended to stick with its August 2025 publication schedule for the United Kingdom edition of Plaintiff's book.

22. Upon information and belief, around this time Defendant decided that it would not move forward with the publication of Plaintiff's book, regardless of the quality of the manuscript.

23. In the meantime, Plaintiff had undertaken to revise the manuscript.

24. Shockingly, on May 15, 2025, Defendant terminated the Agreement for "unacceptability" despite Plaintiff having sixty-two days remaining in that ninety-day period—a clear breach of the Agreement's express provision and in bad faith.

25. Plaintiff emailed Ms. Bell on May 21 to reassure her that a comprehensive edit was forthcoming.

26. In response, Ms. Jennifer Bergstrom, Ms. Bell's colleague at Defendant, emailed Plaintiff on May 23 and reiterated Defendant's termination of the Agreement.

27. The manuscript *was* editorially acceptable to Defendant and Defendant's termination of the Agreement was in fact based solely on non-editorial concerns, including—without limitation—financial and publication scheduling concerns.

28. Because the Defendant terminated the Agreement prior to the ninety-day period the contract provided for revisions, and ultimately failed to publish within the timeframe required by the Agreement, Plaintiff is entitled to the second and final installments of the advance payment.

29. HarperCollins went on to publish the UK edition of *Entitled*, as planned, to great acclaim. The book immediately became a *Sunday Times* #1 Bestseller and remained in the #1 position the following week. As of August 21, 2025, one week after its release, *Entitled* was the #1 selling book on Amazon.co.uk.

30. The performance of the UK edition confirms that, had *Entitled* been published in the US by Defendant, it would have been an enormous commercial and critical success.

## Claims

## COUNT I: Breach of Contract

31. Plaintiff reincorporates the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

32. Defendant is liable for breach of contract. The parties entered into a valid and enforceable Agreement, which both parties signed in April 2025.

33. The Plaintiff performed all of his obligations under the Agreement.

34. Defendant materially breached the clear and unambiguous terms of the contract by, among other things: (1) terminating the Agreement for non-editorial reasons in violation of the plain language of the Agreement; and (2) terminating the Agreement prior to expiration of the 90-day period of time provided in the Agreement for Plaintiff to make editorial changes.

35. Defendant's breach of the Agreement caused Plaintiff considerable damage including, without limitation, the loss of the final two-thirds of his advance ($166,666.67), the additional royalties that would have been owed under the Agreement after the book earned out that advance, and substantial reputational harm to Plaintiff.

### COUNT II: Breach of the Contract's Implied Covenant of Good Faith and Fair Dealing

36. Plaintiff reincorporates the allegations set forth in paragraphs 1 through 31 as if fully set forth herein

37. Under New York law, the implied covenant of good faith and fair dealing is inherent in every contract. The covenant is violated where a contract provides for a party's exercise of discretion, and the discretion is exercised irrationally or arbitrarily, or where a party exercises a contractual right malevolently for its own gain or as part of a purposeful scheme to deprive a plaintiff of the benefits of a contract.

38. Defendant exercised its right of editorial review set forth in the Agreement irrationally and arbitrarily, and as part of a scheme to evade its obligations under the Agreement, including, without limitation, the obligations to pay Plaintiff what remained on the advance and to publish Plaintiff's book in the United States.

39. By reason of the foregoing, Defendant breached the covenant of good faith and fair dealing and Plaintiff suffered damages as a result.

## **Prayer for Relief**

As a direct and proximate result of the defendants' conduct, Dr. Andrew Lownie suffered the injuries described above.

WHEREFORE, Plaintiff requests that this Court:

1. Award general damages, including pre and post-judgement interest;

2. Award consequential damages;

3. Award punitive damages;

4. Award injunctive relief;

5. Award reasonable attorneys' fees and the costs of this action; and

6. Award any other relief that this Court deems appropriate.

## **Jury Demand**

A jury trial is hereby demanded.

[signature on following page]

Dr. Andrew Lownie,

By his attorneys,

/s/ Jeffrey Wiesner
Jeffrey Wiesner*
Owen Woo*
Wiesner McKinnon LLP
New York Office:
418 Broadway #4674
Albany, NY 12207
Massachusetts Office:
88 Broad St., Ste. 503
Boston, MA 02110
Tel.: (617) 303-3940
Fax: (617) 507-7976
jwiesner@jwjmlaw.com
owoo@jwjmlaw.com

Dated:          December 11, 2025

*Motion for admission to the Southern District of New York *pro hac vice* pending